UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES C.,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　Defendant. | CASE NO. 3:20-cv-05323-BAT<br><br>**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE WITH PREJUDICE** |

Plaintiff seeks review of the denial of his application for Supplemental Security Income. He contends the ALJ erred by (1) misevaluating the medical evidence; (2) discounting his symptom testimony; and (3) improperly assessing residual functional capacity ("RFC"); and also argues (4) new evidence submitted to the Appeals Council that post-dates the ALJ's decision requires remand for a new hearing. Dkt. 20. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 34 years old, has a high-school education, and worked years ago as a customer service representative, a housekeeper, and a janitor. Tr. 249, 253. He applied for benefits, eventually amending the alleged onset date of disability to his application date of June 30, 2017. Tr. 59. After holding a December 2018 hearing, the ALJ issued a January 2019

1   decision. Tr. 34–48, 53–105. The ALJ found that plaintiff has severe impairments of generalized

2   anxiety disorder, agoraphobia, major depressive disorder, and asthma. Tr. 36. The ALJ assessed

3   an RFC of light work with additional physical, environmental, mental, and social limitations. Tr.

4   38. The ALJ found that plaintiff could perform jobs that exist in significant numbers in the

5   national economy. Tr. 46. The ALJ therefore determined that plaintiff is not disabled. Tr. 46–48.

6   As the Appeals Council denied plaintiff's request for review, the ALJ's decision is the

7   Commissioner's final decision. Tr. 1–4.

## DISCUSSION

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Although plaintiff's interpretation of the evidence with respect to mental limitations is plausible, he has failed to demonstrate that the ALJ's decision was unreasonable, unsupported by substantial evidence, or the result of harmful legal error with respect to evaluating (1) medical evidence; (2) plaintiff's testimony; (3) RFC; and (4) evidence newly presented to the Appeals Council that post-dates the ALJ's decision. The Court therefore affirms the Commissioner's final decision and dismisses the case with prejudice.

1. **Medical Evidence**

Plaintiff argues that the ALJ improperly discounted the examining opinion of Terilee Wingate, Ph.D., and the affirming, reviewing opinion of Luci Carstens, Ph.D., and gave undue

weight to the reviewing opinions of Marco Rubio, M.D., Michael Brown, Ph.D., and Michael Regets, Ph.D. Dkt. 20, at 2–4, 6–7. Plaintiff also contends that the ALJ misapprehended other medical testimony but offers no specifics other than that there is medical evidence that supports his position. Dkt. 20, at 4–6. The Court finds that the ALJ's evaluation of the medical evidence was reasonable, supported by substantial evidence, and free from harmful legal error.

When considering medical opinions (filed on or after March 27, 2017), the ALJ considers the persuasiveness of the medical opinion using five factors (supportability, consistency, relationship with claimant, specialization, and other), but supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), (c) (2017). The ALJ must explain in his decision how persuasive he finds a medical opinion(s) and/or a prior administrative medical finding(s) based on these two factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). The ALJ may, but is not required to, explain how he considered the other remaining factors, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017). And the new regulations eliminate the agency's "treating source rule," which gave special deference to treating doctors' opinions. 82 Fed. Reg. at 5853.

      **a. Dr. Wingate**

In July 2016, examining psychologist Dr. Wingate diagnosed anxiety disorder, agoraphobia, major depressive disorder, and passive and avoidant personality traits. Tr. 320–21. Dr. Wingate opined that plaintiff was markedly limited overall and with respect to performing activities within a schedule, maintaining regular attendance, and being punctual; communicating effectively in a work setting; maintaining appropriate behavior in a work setting; and completing

1    a normal workday and work week. Tr. 321. Dr. Wingate also opined moderate limitations in

2    adapting to changes in a work setting and asking simple questions or requesting assistance. Tr.

3    321. The ALJ found Dr. Wingate's opinion to be unpersuasive because (1) it is not consistent

4    with her own, largely unremarkable examination of plaintiff, and (2) the degree of limitation

5    assessed was inconsistent with plaintiff's counseling and primary care records. Tr. 44–45. Both

6    of these reasons are supported by substantial evidence and are not harmfully erroneous as a

7    matter of law. Thus, though the new regulations no longer demand that an ALJ give greater

8    weight to medical opinions based on treating relationship, the ALJ has provided specific and

9    legitimate reasons for discounting Dr. Wingate's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th

10   Cir. 1995); *see, e.g.*, *Kathleen G. v. Commissioner of SSA*, 2020 WL 6581012 (W.D. Wash.,

11   Nov. 10, 2020), at *3 (finding that the new regulations do not clearly supersede the "specific and

12   legitimate" standard because the "specific and legitimate" standard refers not to how an *ALJ*

13   should weigh or evaluate opinions, but rather the standard by which the *Court* evaluates whether

14   the ALJ has reasonably articulated his or her consideration of the evidence).

15        First, it was not unreasonable for the ALJ to conclude that Dr. Wingate's own mental

16   status examination contradicted the severity of the assessed mental and social restrictions. Tr. 44.

17   Dr. Wingate observed no concerns about appearance, speech, or attitude and behavior but noted

18   that plaintiff was "mildly dysphoric" and his "[a]ffective range was blunted." Tr. 322. Dr.

19   Wingate concluded that plaintiff was within normal range for thought process and content,

20   orientation, perception, memory, fund of knowledge, concentration, and abstract thought. Tr.

21   323. Dr. Wingate found plaintiff not within normal limits in one domain, insight and judgment,

22   because when presented with the question of what he would do if he was the first one to see a

23   fire in a crowded theater, plaintiff replied "Leave the theater." Tr. 323. The mild results from the

mental status exam conceivably undermine Dr. Wingate's assessment that plaintiff had marked limitations in performing work-related activities within a schedule, maintaining punctual attendance, communicating effectively, behaving appropriately, and completing a workday and work week. *Compare* Tr. 321 *with* Tr. 322–23. For example, that Dr. Wingate noted plaintiff was cooperative with logical and linear speech, and based a detailed psychosocial, medical, educational, and work history based on plaintiff's personal account, conceivably undermine the conclusion that plaintiff suffered from a marked limitation in the ability to communicate effectively. *See* Tr. 319–23.

Second, it was not unreasonable for the ALJ to conclude that the degree of mental limitation assessed by Dr. Wingate was inconsistent with plaintiff's counseling and primary care records. Tr. 45. The ALJ cited counseling records that showed improvement with counseling interventions, getting out of the house more, and playing music. Tr. 45. In March 2017, plaintiff reported having healthier sleeping habits and moving more, Tr. 330; in May 2017, he reported that the medication was working and attended a crab festival for 1.5 hours before leaving due to anxiety, Tr. 334; in September 2017, he reported decreased depressive symptoms, especially with working on plans to engage his musical talents, Tr. 339; in August 2018, he reported reuniting with childhood friends who are supportive and going "out to stores and in public daily with significantly less anxiety," Tr. 464; and in December 2018, his counselor reported that his "progress is good at this time, working at gaining insight of affective concerns and developing tools to help manage fluctuating symptoms" and satisfactory participation, Tr. 544. Similarly, in September 2016, his mental status examination upon beginning mental-health treatment showed no symptoms or slight/occasional symptoms in 62 out of 65 areas, and marked/repeated symptoms in 3 of 65 domains—decreased, soft, whispers in body movement; impaired remote

1  memory; and disconnection with reality, depersonalization, Tr. 365–67; in June 2017, he

2  reported taking steps to expose himself to social experiences, "tolerating being out in the

3  community at this time," and the desire to look over college classes to determine which ones he

4  would be interested in taking, Tr. 336; in July 2017, he reported that when he was outside more

5  frequently, he felt less depressive symptoms, that he visited the library and researched college

6  classes, and that even with increased anxiety his depressive symptoms were lessening and he was

7  engaging in more out-of-home activities, Tr. 337; and in a March 2018 primary care visit, the

8  physician opined that plaintiff should continue Zoloft, that there was no further need of

9  hydroxyzine, and that the next follow-up review of that medication should occur in a year, Tr.

10  474.

Plaintiff has failed to demonstrate that the ALJ's decision to discount Dr. Wingate's opinion was unsupported by substantial evidence or the result of harmful legal error.

### b. Dr. Carstens

In June 2017, Dr. Carstens reviewed Dr. Wingate's July 2016 evaluation and, apparently, the May 11, 2017 record from Sea Mar Community Health Centers social worker/counselor Brendalis Rios, MSW, MHP, LSWAIC. Tr. 442–45 (citing Tr. 359, 319–23). Dr. Carstens agreed with Dr. Wingate's July 2016 assessment. She noted, however, that while Dr. Wingate noted a disability duration of 12 months, a longer duration of 18-24 months should be considered "based on available clinical documentation." Tr. 442. The clinical documentation for this recommendation appears to be Ms. Rios's May 11, 2017 letter, in which Ms. Rios noted:

> [Plaintiff] has not been able to improve his symptoms to a level where he could feel comfortable working, as he reports his anxieties and the fear of interacting with other people is not under control. He presents with symptoms of social phobia, where he reports he fears being around a big crowd of people and avoid

> social situations. Due to such fears he reports not feeling comfortable integrating back into the working world.

Tr. 359. The ALJ discounted Dr. Carsten's opinion adopting Dr. Wingate's assessment for the same reasons he discounted Dr. Wingate's opinion: inconsistency with Dr. Wingate's mild mental status examination and with the counseling and primary care records. Similarly, the ALJ discounted Ms. Rios's May 11, 2017 statement because it was not consistent with Ms. Rios's own treatment notes. Tr. 45.

It was not unreasonable for the ALJ to have discounted Dr. Carstens's opinion adopting Dr. Wingate's assessment for the same reasons he discounted Dr. Wingate's opinion. To the extent Dr. Carstens appeared to rely on Ms. Rios's statement to opine a lengthier disability duration, that extended duration is reasonably contradicted by the counseling and primary care records cited earlier, as well as by Dr. Rios's own treatment notes. For example, in March 2017, Ms. Rios noted that plaintiff's medication was working, explained the importance of exposure to public situations, and observed that plaintiff was able to stay at a crab festival for 1.5 hours before anxiety led him to depart. Tr. 360. Moreover, Ms. Rios did not herself opine that plaintiff would be unable to work for a specific, lengthy duration, or that plaintiff's social anxiety or depression precluded work activity; rather, Ms. Rios was careful to state that *plaintiff* did not "feel comfortable working" and that, due to social fears, *plaintiff* "reports not feeling comfortable integrating back into the working world." Tr. 359. As discussed below, the ALJ cited clear and convincing reasons for discounting plaintiff's symptom testimony. It would therefore be reasonable for the ALJ to have presumed that the medical record, Ms. Rios's statement, and Dr. Wingate's opinion did not support Dr. Carstens's conclusions.

Plaintiff has failed to demonstrate that the ALJ's decision to discount Dr. Carstens's opinion was unsupported by substantial evidence or the result of harmful legal error.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 7

    **c. Dr. Rubio**

Plaintiff challenges that ALJ's decision to find the opinion of reviewing physician Dr. Rubio "somewhat persuasive," arguing broadly that to the extent Dr. Rubio's opinion was inconsistent with Dr. Wingate's opinion and plaintiff's testimony, it was entitled only to limited weight. Dkt. 20, at 6–7. The problem for plaintiff is that the ALJ did precisely that: he gave Dr. Rubio's opinion only limited weight.

Dr. Rubio opined that plaintiff could perform medium work but should avoid concentrated exposure to extreme cold, extreme heat, humidity, and pulmonary irritants. Tr. 125–26. Although the record showed few examination findings with objective evidence of physical limitations, the ALJ assessed in the RFC additional limitations beyond those described by Dr. Rubio "to accommodate any additional exertional asthma triggers the claimant may experience and accommodate any limitation from obesity." Tr. 44. Moreover, although it is undisputed that spirometry testing throughout the record showed only mild obstruction, and plaintiff has rarely reported significant asthma symptoms with medication, the ALJ assessed that a limitation to light work would be more consistent with the longitudinal record. *Id.*; *see, e.g.*, Tr. 542 (January 2018 spirometry testing showing "[m]ild airway obstruction"); Tr. 573 (in December 2018, medical consultant denying spirometry request "due to multiple pulmonary function studies on file, most recently performed 7/2018," with none approaching listing level).[1] Dr. Wingate's opinion on plaintiff's mental limitations has no bearing on Dr. Rubio's opinion on plaintiff's physical limitations. Plaintiff has not indicated how Dr. Rubio's opinion regarding

---

[1] Although plaintiff argues that the opinion of Dr. Rubio and all other reviewers should be discounted because they failed to account for records since October 2017, he fails to indicate any evidence after October 2017 that suggests physical limitations greater than those assessed in the RFC. Dkt. 20, at 7.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 8

physical limitations, which are consistent with the medical record, could be plausibly rejected in favor of whole cloth acceptance of plaintiff's testimony.

Plaintiff has failed to demonstrate that the ALJ's decision to discount Dr. Rubio's opinion and assess greater physical restrictions was unsupported by substantial evidence or the result of harmful legal error.

### d. Dr. Brown and Dr. Regets

Plaintiff challenges the ALJ's decision to find the opinions of reviewing psychologists Drs. Brown and Regets to be persuasive overall as consistent with the treatment record, arguing the opinions should have been discounted as inconsistent with Dr. Wingate's opinion and plaintiff's testimony, and because they did not account for evidence since October 2017. Dkt. 20, at 6–7; *see* Tr. 113–15 (Dr. Brown), 126–28 (Dr. Regets). As discussed above and below, the ALJ supported his reasons for discounting Dr. Wingate's opinion and plaintiff's testimony with substantial evidence, and plaintiff has failed to indicate what evidence since October 2017 meaningfully contradicts the ALJ's reliance upon the opinions of Drs. Brown and Regets to determine that plaintiff retained the mental RFC to understand, remember, and apply detailed but not complex instructions; can work in an environment that is not a fast-paced, production-type environment; and can perform jobs that involve no interaction with the general public and only occasional interaction with coworkers. *See* Tr. 38.

Plaintiff has failed to demonstrate that the ALJ's decision to give persuasive weight to the opinions of Drs. Brown and Regets was unsupported by substantial evidence or the result of harmful legal error.

      **e. Other Medical Evidence**

Although plaintiff argues that the ALJ should have interpreted the other medical evidence differently, he fails to demonstrate that the ALJ's interpretation of the medical evidence was unreasonable. Dkt. 20, at 4–6. The Court therefore summarily rejects as unsupported plaintiff's blanket claim that the ALJ misevaluated all other medical evidence.

2. **Plaintiff's Testimony**

Plaintiff alleges that the ALJ failed to cite clear and convincing reasons for discounting plaintiff's testimony because the ALJ misevaluated the medical evidence and self-reports of daily activities. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The Court disagrees.

That a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it. *See Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (internal marks and citation omitted). In evaluating a claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation," such as inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms. *Id.* (internal marks and citations omitted). Effective March 28, 2016, Social Security Ruling ("SSR") 16-3p, eliminates previously applicable SSR references to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. See SSR

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 10

16-3p, *available at* 2016 WL 1119029, at *1–*2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. While a claimant need not "vegetate in a dark room" in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *Molina*, 674 F.3d at 1112–13 (internal marks and citations omitted). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113.

With respect to plaintiff's asthma, the ALJ thoroughly reviewed the medical record and noted how both the treatment record and plaintiff's own statements contradicted his testimony about disabling symptoms. Tr. 39–40. Numerous spirometry tests showed only mild effects from plaintiff's respiratory condition. *See, e.g.*, Tr. 395–96 (Sept. 2016); Tr. 542 (Jan. 2018); Tr. 471–72 (July 2018). In describing his asthma symptoms to Dr. Wingate in July 2016, plaintiff said that although he had been diagnosed with asthma at the age of 4 or 5 and was on medication since the age of 6, there had been no asthma attacks since 2007 or 2008, and though he took Advair through high school, he no longer needed it. Tr. 319. In October 2016, plaintiff told his medical provider that his asthma and allergy symptoms were "better than ever and he has little difficulty with breathing or upper respiratory symptoms." Tr. 388. In July 2018, plaintiff said his asthma symptoms were triggered by exposure to animals and environmental smoke, but not by change in living environment, cold air exposure to chemicals, exposure to dust, exposure to passive smoke, exposure to poison ivy, exposure to pollens, and exposure to roaches or mold. Tr.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 11

469. Plaintiff said his symptoms were relieved by use of an inhaler. *Id.* In October 2018, plaintiff's treating physician diagnosed stable, moderate, persistent asthma without complication triggered by fire smoke that was to be treated with Flovent and a rescue inhaler. Tr. 468. Thus, the record is fully consistent with the ALJ's assessment that plaintiff can have no more than occasional exposure to concentrated levels of dust, fumes, gases, odors, and other pulmonary irritants. Tr. 38. Moreover, the ALJ decided to give plaintiff's testimony more weight than justified by these medical reports, including more restrictions than those opined by reviewing physician Dr. Rubio. Tr. 125–26.

      As discussed earlier, plaintiff has not demonstrated that the ALJ failed to support his interpretation of the medical evidence about mental limitations with substantial evidence or in violation of the law because Dr. Wingate's opinion was discounted as inconsistent with mental status examinations and other medical evidence. Plaintiff's testimony about mental limitations is similarly inconsistent with his generally benign mental status examinations and indications of improvement with medication and counseling. With respect to daily activities, the ALJ noted that despite plaintiff referring to ongoing, debilitating anxiety, he did not display such anxiety when presenting to his treating providers, including his primary care provider, his counselor, and when changing counselors. Tr. 46 (citing Tr. 321–22, 336, 337, 366–67, 474). The ALJ also noted that plaintiff's showed greater social functioning than alleged: playing music in a local coffee shop in February 2018; attending a crowded festival for over an hour in May 2018; and being in public daily and reengaging friendships with old friends. Tr. 46 (citing Tr. 334, 458, 464). Plaintiff correctly notes that the ALJ appears to have discounted his testimony about mental and social limitations for two improper reasons: beginning the relationship with his girlfriend during the period of alleged disability when, in fact, it began a year prior to the alleged onset date; and

applying for a census job a year before his alleged onset date. Tr. 41. The ALJ's improper citation to these events does not, however, vitiate that he presented other valid, clear and convincing reasons to discount plaintiff's testimony: inconsistency with the mental status examinations, the medical record, and plaintiff's daily activities.

Plaintiff has failed to demonstrate that the ALJ's choice to discount his symptom testimony was unsupported by substantial evidence or the result of harmful legal error.

3.  **RFC**

Plaintiff alleges that the ALJ's misevaluation of the medical record and the testimony led to an unsubstantiated RFC assessment. For the reasons set forth earlier, the Court rejects this argument. The ALJ neither harmfully erred nor failed to support the decision with substantial evidence with respect to the RFC assessment.

4.  **Evidence Presented to Appeals Council**

Plaintiff presented the Appeals Council with an April 2019 examining opinion from Dr. Wingate that confirmed her 2016 opinion and stated that plaintiff's prognosis for work is guarded to poor since he had not demonstrated much change in spite of years of therapy. Tr. 13–17. The Appeals Council considered Dr. Wingate's April 2019 opinion but found that the opinion, as well as other evidence post-dating the ALJ's January 2019 decision, did not relate to the period at issue. Plaintiff argues that the Appeals Council's decision not to remand on the basis of Dr. Wingate's April 2019 opinion constituted reversible error. The Court disagrees.

First, the Appeals Council was correct that the medical evidence post-dating the ALJ's January 2019 opinion had limited relevance to the period at issue. Second, Dr. Wingate's April 2019 opinion was so similar to the July 2016 opinion that it could be discounted for the same reasons: inconsistency with the contemporary mental status examination and the longitudinal

medical record. *Compare* Tr. 13–17 *with* 319–23. Third, Dr. Wingate's April 2019 opinion was inconsistent with the contemporaneous chart notes submitted to the Appeals Council, which showed in March 2019 plaintiff was looking for a job; was calm and cooperative, well-groomed, with appropriate eye contact; had appropriate judgment and insight; had a normal mood and affect, speech, and thought content; was logical and goal-directed; and was counselled about job hunting and interviewing. Tr. 21–22.

Plaintiff has failed to demonstrate that the Appeals Council's decision not to remand based on Dr. Wingate's April 2019 opinion was unsupported by substantial evidence or the result of harmful legal error.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 12th day of March, 2021.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge